Spear, J.
The indictment contained two counts. The first charged that on the nth day of March, 1905, the defendant, a male person of the age of eighteen years and upward, did unlawfully and knowingly, carnally know and abuse one L. H., with her consent, she, the said L. H., then and there being a female person under the age of sixteen years, to-wit, of the age of fourteen years. And by the second count it was charged that 013 the same date the defendant in and upon one L. H. unlawfully and violently did make an assault, and her, the. said L. PI., then and there, did unlaw *261 fully, forcibly, and-against her will, - unlawfully ravish and carnally know, she the said L. H., then and there being a female person, other than the daughter or sister of the defendant, and being a female person under the age of sixteen years, to-wit, of the age of fourteen years.
Three assignments of error are found by the circuit court as grounds for the judgment of reversal, viz.: 1. The trial court did not grant defendant a public trial as guaranteed by the constitution. 2. The trial court erred in overruling the motion of defendant to' compel the state to elect upon which count in the indictment it would base its claim for a conviction. 3. The court erred in charging the jury that they might find a general verdict of guilty upon both counts if they should find the evidence to warrant a conviction upon either count.
1. Facts bearing upon the first point are: The trial was entered upon in the large general court room in the court house. At the instance of counsel for defendant the witnesses for the state were ordered excluded from the room until called, and on like motion by the state all witnesses for defendant were also similarly excluded except one Grimes, a witness for defendant, whose presence was desired by defendant’s counsel. After the examination of the first witness, on the reassembling of court after the noon adjournment, the first day of the trial, the court announced that in view of the testimony expected to be given by the next witness he would continue the trial during the taking of the testimony of witnesses likely to give immoral or obscene testimony in the small court room, the probate court room, and directed the *262 sheriff to admit no one to said room except the jury, defendant’s counsel, members of the bar, newspaper men, and Grimes, defendant’s witness. The order was made in open court in the presence and hearing of defendant and his counsel. No objection was made other than the statement by one of defendant’s counsel that the defense knew of no testimony that would be improper to be heard in a public trial. Thereupon the trial was transferred to the small room, and the judge, the jury, defendant, his counsel, a number of the bar and newspaper men, and the witness Grimes, went to the small room, where the court was opened and by order of the court the general public was excluded during the taking of the testimony by the state in chief, and in reply or rebuttal, save as to one witness, a physician.-
The right of a person accused of crime to a public trial is guaranteed by the constitution, article I, section 10, the provision being that: “In any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process to procure the attendance of witnesses in his behalf, and a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed.” The term “public,” in its enlarged sense, takes in the entire community, the whole body politic, and a public trial means one which is not limited or restricted to any particular class of the community, but is open to the free observation of all. This does not impose upon the authorities a *263 duty to provide so large a place for public trials as would accommodate every member of the community at the same time, for that would be plainly impracticable, but it does import a duty to make reasonable provision in that regard, and this requirement is usually met by ample accommodations for. the purpose. And these considerations suggest the duty of courts, when trying persons accused of crime, to avail themselves of the means thus furnished, but suggest further that the entire public may not be present at such trial. Provisions respecting a public trial similar to that of our constitution above quoted are found in the Federal constitution and in most, if not all, of the constitutions of the states of the Union, and a number of decisions have been rendered by courts of last resort involving the question, although it seems not to have been a frequent subject of judicial decision. Text-writers have also written upon it. The necessity for such provisions arose from the flagrant abuses which disgraced some of the courts of England prior to our American Revolution, and their purpose manifestly is to protect the rights of persons accused of crime. No universal rule, however, has been established which is sure, to apply to all situations. Probably the rule given by Cooley, in his work on Constitutional Limitations, 6th Ed., 379, is as safe a guide as any met with in the' books. It is: “It is also requisite that the trial be public. By this is not meant that every person who sees fit shall in all cases be permitted to attend criminal trials; because there are many cases where, from the character of the charge and the nature of the evidence by which it is to be supported, the motives to attend the trial *264 on the part of portions of the community would be of t'he worst character, and where a regard to public morals and public decency would require that at least the young be excluded from hearing and witnessing the evidences of human depravity which the trial must necessarily ’ bring to light. The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and. that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance 'of their functions; and the requirement is fairly observed if, without partiality or favoritism, a reasonable proportion of the public is suffered to attend, notwithstanding that those persons whose presence could be of no service to the accused, and who would only be drawn thither by a prurient curiosity, are excluded altogether.”
Assuming that the rule above indicated governs the case, it is manifest that the order of exclusion made by the trial judge was in excess of the power of the court in the premises. It permitted the admission of a very limited class of the public and excluded all others. Without doubt the object which was sought to be attained was in all respects, save the one above indicated, highly commendable. The nature of the charge and the opening statements of counsel indicated that revelations from the witness-stand would be indecent in a marked degree, and the sequel, as shown by the record, fully bore out the unpleasant anticipations of the judge. No possible good to the community could result by giving publicity 'to such vile and filthy details, but much probable harm, *265 and especially would this result follow if the testimony were listened to by young people. Had the court continued its sessions in the general court room, and had the order excluded all youths, and allowed free entrance to the court room by others, probably no valid exception to the order could have been taken. It is not intended here to indicate that the trial judge is without power to exclude from the court room during the trial of a criminal case individuals, though adults, who are, by reason of habits or physical condition, personally obnoxious, or persons who by their conduct interrupt the orderly course of business, or the power to clear the room of general spectators who, as in Grimmett v. The State, 22 Texas App., 36, were so boisterous and insubordinate as to intimidate. witnesses, and where it was impossible to distinguish those who participated from those who did not; nor is it doubted that persons whose attendance is for the express and only purpose of using the information thus obtained in a way calculated to directly obstruct the administration of justice may be excluded. Perhaps, too, the character known as the “court room loafer,” whose attendance would be induced only by prurient curiosity, might be excluded without harm to the defendant, or prejudice to the state, although the matter of determining with certainty just who should, and who should not, be included in this category in the given instance, might not always be easy of solution. Much should be, and we think is, necessarily and properly left to the trial judge, who is obliged to insist upon the orderly conduct of the public business, and whose highest duty is the securing to the parties, the defendant as well as.the *266 state, a fair and impartial trial; but the people have the right to know what is being done in their courts, and free observation and the utmost freedom of discussion of the proceedings of public tribunals that is consistent with truth and decency tends to the public welfare. We agree with the holding of the circuit court in the case at bar that the order of exclusion was too general in character and its limitations of admission too-restrictive, and that the defendant was not accorded such a public trial as is guaranteed by the constitution.
It is, however, insisted by counsel for the staté that because no specific objection or exception was entered by the defendant at the time the order was made or was being enforced, the error, if any was committed, can not now be taken advantage of. This objection ignores the force and effect of the constitutional provision. The right to a public trial is guaranteed. It is of the same high order of right as the other guarantees embodied in the section; that to appear and defend in person and with counsel; that to meet the witnesses face to face and have compulsory process, and that to a trial by jury. The right cannot be waived by silence any more than can the right to be tried by jury where the accusation is a felony and the plea-is not guilty. This right should not be confused with a claim sometimes made that a reversal should be ordered where a jury has been obtained in a way not strictly conforming to the statute. The manner of selecting the jury is matter of procedure only, and this court has often held that objection to the mode must be made at the time, but *267 that an impartial jury must be obtained, and if that result is reached the accused is not harmed.
2. At. the conclusion of the state’s testimony in chief the defendant moved the court to require the state to elect upon which count of the indictment it would rely for conviction, and also to elect upon what occurrence, or the date of the transaction in regard to which testimony had been given, it would rely. The first part of the motion was overruled by'the court, and the second sustained. The state thereupon elected to rely upon a date stated, and the cause proceeded upon both counts of the indictment, thus leaving it to the jury to determine, in the event the state had made a case against the defendant, upon which count he was guilty. The overruling of the first part of defendant’s motion was found by the learned circuit court to be erroneous. In this conclusion we do not agree with that court. The' rule respecting criminal pleadings in Ohio permits the joining of two or more counts where the offenses charged are closely related and arise from one transaction. Both characteristics were apparent in this case. This form of pleading may be necessary in order to provide for every possible variation in the evidence, and is common practice. And if such a form of indictment may be permitted it would follow that the jury should pass upon the question of which grade of the offense charged, if either, the defendant had been proven guilty. Authorities to sustain this proposition are abundant. We cite only Bailey v. The State, 4 Ohio St., 440, and The State v. Bailey, 50 Ohio St., 636.
3. The court charged the jury that they might find a general verdict of guilty upon both counts *268 if they should find the evidence to be of such character as to warrant a conviction upon either. Thereupon the jury returned a general verdict of guilty. This charge was based upon the theory that the indictment in fact charges but one crime, and whether the offense was committed with consent or against the will of the female was immaterial. It is true that the crime is denominated rape whether committed forcibly or by consent. Considering the sections under which this indictment was found, it is manifest that the object sought is the protection of young girls, and the precise thing intended to be discouraged, and punished if committed, is sexual intercourse between males of eighteen years and upwards with females of less than sixteen, years. In this aspect the question of force or consent is immaterial. But that is not all of it. The statute (section 6817, Revised Statutes) provides in the one case punishment by incarceration in the penitentiary not more than twenty nor less than three years, and in the other like imprisonment not more than twenty years nor less than one year, or six months in the county jail or workhouse. This difference as to punishment distinguishes the two grades of the offense; it expresses the legislative judgment that the same act done by force is of a more heinous character than if done with consent, as manifestly it is, and so deserving of severer punishment. It would seem, also, to follow that the defendant was entitled to know by the verdict of a jury of what exact grade of crime he had been convicted. It would follow further that the jury should, as- a guide to the court in awarding punishment, determine and fix by the *269 verdict the grade of crime which the testimony-showed the defendant had committed. The charge should have directed that if found guilty on either count a verdict of guilty upon that count and not guilty upon the other should have been returned. It was not possible that the defendant could have been guilty on both. It was held by this court in The State v. Carl, 71 Ohio St., 259, that upon the trial of an indictment charging the commission by the defendant Carl of a like act with consent, evidence tending to show that it was committed without consent was not a fatal variance. This holding is based upon the peculiar wording of the statute, which, as above indicated, carries the implication that the manifest intent of the legislature was to declare that the offense covered by the statute is established by proof that the act was either with consent or without. It is insisted that the above case requires a conclusion different from the one above stated as to this phase of the case at bar. We think not. The court’s charge, we think, was erroneous. Inasmuch, however, as the sentence was of the minimum character, it may be that no essential prejudice to the defendant resulted, and were there no other error the judgment of the common pleas might be affirmed.

Judgment of the circuit court reversing the judgment of the court of common pleas is affirmed.

Shauck, C. J., Price, Crew and Summers, JJ., concur. Davis, J., concurs in the judgment on the ground stated in paragraph three of the syllabus.